UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ghaffara L. Tillis,

                Plaintiff,          **MEMORANDUM OPINION
AND ORDER**
v.          Civil No. 12-324 ADM/TNL

City of Minneapolis, Officer Jordan
Davis, personally, individually, and
in his official capacity, Officer Jeremy
Foster, personally, individually, and
in his official capacity, and Minneapolis
Chief of Police Tim Dolan, personally and
in his official capacity,

                Defendants.

---

Albert T. Goins, Sr., Esq., Goins Law Offices, Ltd., Minneapolis, MN, on behalf of Plaintiff.

Kristin R. Sarff, Esq., and Darla J. Boggs, Esq., Minneapolis City Attorney's Office, Minneapolis, MN, on behalf of Defendants.

---

## I. INTRODUCTION

On August 21, 2013, the undersigned United States District Judge heard oral argument on Defendants City of Minneapolis, Officer Jordan Davis ("Davis"), Officer Jeremy Foster ("Foster"), and Minneapolis Chief of Police Tim Dolan's Motion for Summary Judgment [Docket No. 12]. Plaintiff Ghaffara L. Tillis ("Tillis") opposes the motion. For the reasons stated below, Defendants' motion is granted in part and denied in part.

## II. BACKGROUND[1]

On February 12, 2011, at approximately 10:10 p.m., Minneapolis Police Officers Foster

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

and Davis (collectively, the "Officers") stopped a vehicle heading southbound on Nicollet Avenue. Kristin Sarff Aff. [Docket No. 18] Ex. A (squad car footage and audio). The Officers' squad car was equipped with a dashboard camera. The camera had a clear view of the driver's side of the stopped vehicle, but only a partial view of the passenger side of the vehicle. Foster wore a microphone which recorded audio during the stop. Davis was not equipped with a microphone.

When Foster approached the driver's side of the stopped car, he requested the driver produce his license. Id. at 22:10:04-51. Tillis was in the passenger seat and two young children were in the backseat. Tillis offered her license for the Officers' inspection, but the driver, later identified as Robert Grigsby, did not have a license. Foster escorted Grigsby to the squad car. Id. at 22:10:52-11:07. Grigsby was seated in the backseat of the squad car while Foster attempted to confirm his identity. Davis told Foster that he had encountered Grigsby during a previous stop. Id. at 22:11:40-41. Davis also informed Foster that he recalled encountering Tillis before and that Tillis did not have car insurance at that time. Id. at 22:11:55-22:12:00.

Davis returned to the vehicle to determine whether Tillis had obtained insurance for her vehicle. Foster remained in the squad car to do paperwork and speak with Grigsby. Id. Tillis and Davis had an unrecorded conversation that lasted a little over a minute. Id. at 22:12:18-22:13:33. As Davis walked back toward the squad car, Tillis opened her car door and stood up outside the vehicle. Although there is no audio, it appears from the video that Tillis said something to Davis because he turned back to respond. Id. at 22:13:34-39. Meanwhile, Grigsby asked Officer Foster to ask Tillis to be quiet, saying, "I've dealt with this cop before, he's a good guy, but, you know, he doesn't have too much tolerance." Id. at 22:13:38-47. Foster exited the squad car and approached the stopped vehicle. Id. at 22:13:54-14:05. Foster's microphone

2

recorded Davis repeatedly asking Tillis to sit back down in the car, and Tillis sat as Foster approached. Foster then interrupted Davis to ask if Tillis had auto insurance. Tillis said that she had a one year policy, but that it had just lapsed. Id. at 22:14:05-12. Foster informed Tillis that because she lacked insurance, her car would be towed. Id. at 22:14:13-20. Tillis was instructed to "find arrangements" to take her children home because she was not going to be allowed to drive the vehicle. Id.

Tillis argued and pled with the Officers to allow her to drive home. Tillis asked, "Can, I drive home, please?" Id. at 22:14:36-38. To which Davis responded, "No, you don't have insurance on the car." Id. The two then began speaking over each other. Ultimately, Davis, talking over Tillis's continued protests, said, "Okay, I will give you one more opportunity, opportunity to make arrangements, okay, listen to me, your car is getting towed." Id. at 22:14:42-54. Davis then turned away from Tillis, who was still arguing, and walked with Foster back toward the squad car, saying to Tillis, "Stay in the car." Id. at 22:14:54-15:00. Nevertheless, Tillis stood up out of the car and continued to argue as the Officers walked away. The microphone did not record what she said, but Davis is heard saying, "Ma'am, just sit in the car, okay?" Id. at 22:15:00-05. Although Foster got into the squad car, Davis continued to stand outside as Tillis, seen on the dashboard camera but not recorded on audio, continued talking and gesturing at Davis. Id. at 22:15:05-16:00.

Eventually, Tillis sat back in her vehicle and Davis re-entered the squad car. Davis called for a tow truck, and for the next approximately 7 minutes the Officers completed paperwork needed to issue citations to Tillis, for failure to have valid insurance, and to Grigsby, for driving without a license. Id. at 22:16:01-23:00.

When the Officers returned to Tillis's vehicle to issue the citations, the tow truck had not

3

yet arrived. Tillis stood between the opened car door and the passenger seat. Davis opened Tillis's passenger-side car door and stood in front and a little to the left of her. Foster stood to Tillis's right next to the passenger-side rear wheel. The Officers again informed Tillis that the car was being towed. Tillis again argued that the Officers did not have to tow the car. One of the Officers[2] said, "You don't have insurance." Tillis responded, "I do have insurance." Id. at 22:23:23-24.

At this point, Defendants argue, Tillis was contradicting her earlier statements in an attempt to obstruct the towing of her car. Defs.' Mem. Supp. Summ. J. [Docket No. 14] 6. Tillis argues that at the time, she was still in a conversation as to whether she should be allowed to drive her car home. Pl.'s Mem. Opp. Summ. J. [Docket No. 28] 3-4. Davis asked, "Do you need to go to jail tonight?" Sarff Aff. Ex. A at 22:23:25-26. Tillis continued to calmly argue about her insurance. Davis asked again, "Do you need to go to jail tonight?" When Tillis ignored the question and continued to argue, Davis said, "Listen to me. Do you need to go to jail tonight?" Id. at 22:23:32. Tillis repeated again, "I do have insurance." Id. at 22:23:35. One of the Officers then said, "Okay. Get your kids out of the car right now." Id. at 22:23:36.

One of the Officers again repeated his warning that if Tillis did not remove her children from the car she was going to go to jail. Id. at 22:23:36-38. At the very end of the warning, Davis reached out and grabbed Tillis's arm to pull her away from the car. Id. at 22:23:37-38. Tillis pulled back saying "Do not grab me, I'm about to get my kids out of the car." Id. at 22:23:38-40. The struggle that followed is not clearly seen in the video, and the audio is often jumbled. Davis pulled Tillis's arm back behind her and pinned her to the car. Id. at 22:23:40-

---

[2] Audio is unclear as to the speaker in this instance and several others. The phrase, "one of the Officers" will be used when it is uncertain if the speaker is Davis or Foster.

41. As he attempted to gain control of her other hand and arm, Tillis screamed and one of the Officers told her, "Knock it off." Id. at 22:23:42-49. Tillis screamed, "I'm going to get my kids out . . .", to which Davis responded, "No, you're going to jail." Id. at 22:23:50-52. One of the Officers then told Tillis, "Quit fighting. Quit fighting." Id. at 22:23:52. Tillis, while struggling, said, "I'm going to get my kids out, I promise." One of the Officers repeated, "Quit fighting, quit trying to pull your hand away." Id. at 22:23:57-59.

The Officers continued to shout commands for Tillis to stop fighting and to give them her hands to allow them to apply handcuffs. Tillis argues that her body was moving involuntarily in response to pain. Defs.' Mem. Supp. 7. Defendants contend Tillis contorted her body and pulled away her arms such that they had no choice but to increase the amount of force needed to apply handcuffs, including grabbing her hair and trying to pin her body against the car. Id. at 8. The audio recording clearly demonstrates that the Officers continued to tell Tillis to relax her arms, to stop pulling away, and to stop struggling. Tillis, throughout the struggle, continued to tell the Officers that she would get her children out of the car. An Officer told Tillis, "You're going to jail," to which she responded, "No, I'm not going to jail," as she slipped out of the Officers' grasp and onto the ground. Id. at 22:24:29-34. At this point on the video, Davis can be seen maneuvering Tillis away from the car and fully onto the ground. Id. at 22:24:38-41.

The remainder of the incident occurred off camera, but Foster's microphone recorded the following audio. One of the Officers told Tillis, "You're going to get tased if you don't stop." Tillis Dep. at 155:24-156:2; Sarff Aff. Ex. A at 22:24:36. Next, one of the Officers yelled, "Put your hands behind your back now," and then, "get your hands behind your back." Sarff Aff. Ex. A at 22:24:46-49. Tillis repeated three times, "what did I do?" Tillis Dep. at 158:10-17. Officer

Davis responded, "you're obstructing." Tillis Dep. at 159:17-23; Sarff Aff. Ex. A at 22:24:52. One of the Officers ordered Tillis to "let [her] hand go down." Tillis Dep. at 160:3-8; Sarff Aff. Ex. A at 22:24-57. The Officers warned Tillis, "You're going to get tased. Let your hand go," and "Put your hand behind your back." Id. at 22:25:00. Davis then used the taser on Tillis.[3]

Tillis argues Davis had no cause to arrest her for obstruction of legal process. Furthermore, she alleges Davis slammed her face and head into the car. She also alleges Davis pulled hair from her scalp and that Foster assisted him. Tillis claims that she could not and did not offer any resistance to either officer. Tillis alleges, neither officer gave her any reasonable commands or orders that she could comply with because the force they applied was so excessive that all she could do was react to the enormous pain. Tillis contends Defendants' sole purpose was to inflict as much pain as possible upon her, and that she was already handcuffed when she was tased.

### III. DISCUSSION

**A.      Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54

---

[3] Tillis alleged that both officers tasered her, but records of taser discharge show that only Davis's taser was used.

F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.	42 U.S.C. § 1983**

"Section 1983 imposes liability for certain actions taken 'under color of' state law that deprive a person 'of a right secured by the Constitution and laws of the United States.'" Dossett v. First State Bank, 399 F.3d 940, 947 (8th Cir. 2005) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 931 (1982)).

**1. Qualified Immunity**

The standard for assessing qualified immunity is one of "objective legal reasonableness." Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001) (citing Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982)). The first question is whether, viewing the facts in the light most favorable to the party asserting the injury, the officer's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part, Pearson v. Callahan, 129 S.Ct. 808, 818 (2009). If the first question is answered in the affirmative, the second question is whether the violated right was clearly established.[4] Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that the defendant should have taken the disputed action." Winters, 254 F.3d at 766. "Whether a given set of facts entitles the official to summary judgment on qualified immunity grounds is a question of law." Greiner v. City of Champlin, 27 F.3d 1346, 1352 (8th Cir. 1994).

---

[4] In Pearson, the Supreme Court ruled that courts have the discretion to choose to evaluate the second question before deciding the first question. See Pearson, 129 S.Ct. at 818.

7

## 2. Excessive Force

Tillis asserts the Officers acted under color of state law to deprive Tillis of her constitutional right to be free from excessive force. When an excessive force claim "arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." Graham v. Connor, 490 U.S. 386, 394 (1989). As such, force used in the course of an arrest must be reasonable. Id. at 395-96. The officer's use of force must be viewed in context, with "careful attention to the facts and circumstances" of the case at hand. Id. at 396. The use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. If an officer's actions are objectively reasonable, qualified immunity will prevent liability. Id. at 397.

The Eighth Circuit Court of Appeals recently clarified how courts in this district evaluate the use of force during an arrest. See Chambers v. Pennycock, 641 F.3d 898, 905-08 (8th Cir. 2011). However, qualified immunity considers only what a reasonable officer would have understood about the law at the time of the arrest. In this case, Defendants would not have had the benefit of Chambers' analysis because Tillis's arrest occurred in February 2011. As such, the law existing at the time of the arrest must apply. See, e.g., Bishop v. Glazier, 723 F.3d 957, 962 (8th Cir. 2013). Prior to Chambers, a "reasonable officer could have believed that as long as he did not cause more than de minimus injury to an arrestee, his actions would not run afoul of the Fourth Amendment." Chambers, 641 F.3d at 908; see Robinson v. City of Minneapolis, No. 10-3067, 2013 U.S. Dist. LEXIS 106342 at *n.3 (D. Minn. July 30, 2013) (a de minimus injury defense will shield officers from liability only for arrests occurring before June 6, 2011, the date Chambers was decided).

The Officers' involvement in this case occurred on February 12, 2011. Under the pre-

Chambers understanding of the law, if Tillis sustained only de minimus injuries, the Officers are entitled to qualified immunity on her excessive force claim. Tillis submitted photos taken of her bruised and scraped face and neck. Albert Turner Goins, Sr., ("Goins") 4th Decl. [Docket No. 24] Exs. 1-7; and 5th Decl. [Docket No. 29] Exs. 8-13 (photos taken while Tillis was in custody following the incident described in her complaint). Tillis also submitted medical records from the University of Minnesota Medical Center in Minneapolis, Minnesota, where on February 13, 2011, the medical staff recorded her injuries. Goins 2nd Decl. [Docket No. 26] Ex. 1. The two sources of information are consistent. Tillis had hair missing or pulled out; contusions, abrasions and swelling of her face, back, and wrists; and redness at her neck. Id. Tillis's "chief complaint" to doctors was a headache and facial pain. 2nd Decl., Ex. 1 at 8. The attending nurse suggested Tillis might have a concussion; therefore, the nurse discharged Tillis with a recommendation to use ice and ibuprofen for the swelling and pain, to rest, and to take head injury precautions. The nurse also instructed Tillis that if she had any more symptoms she should return to the hospital. Id. One of the photographs shows taser marks on Tillis's back, but the attending nurse made no particular remark about and prescribed no special care for Tillis's back. Tillis did not return to the hospital for treatment related to this incident.

In October 2011, Tillis visited Fairview Southdale Hospital in Edina, Minnesota. She reported that earlier in the year she ceased breastfeeding and felt something was wrong. The doctors found nothing abnormal. Id. at Ex. 2.

The standard to be applied here is "a de minimus use of force or injury is insufficient to support a finding of a constitutional violation." Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003). Therefore, the Court compares Tillis's injuries to injuries found to be de minimus in other cases. Id. "[F]or the application of handcuffs to amount to excessive force there must be something beyond allegations of minor injuries." Id. at 1008 (holding as a matter

9

of law that handcuffing resulting in bleeding was not excessive where long term injury was not alleged or supported by medical records); see also Foster v. Metro. Airports Com., 914 F.2d 1076, 1082 (8th Cir. 1990)(finding allegation of nerve damage as a result of being handcuffed was "easily disposed of" where plaintiff presented no medical records or evidence of permanent injury to support a claim of excessive force). Tillis was prescribed ibuprofen, ice, and rest for her injuries. The nurse recommended Tillis return to the hospital if she had ongoing or recurring symptoms, but Tillis did not seek any further treatment. Tillis's bumps, bruises, contusions, redness, swelling and the Taser marks on her back were less severe than what courts in this district have found to be de minimus. See LaCross v. City of Duluth, 715 F.3d 1155, 1158 (8th Cir. 2013) (taser caused de minimus injury); and Robinson, 2013 U.S. Dist. LEXIS 106342 at *14-15 (listing cases where other similar injuries were found de minimus); Chambers, 641 F.3d at 906 (back contusions, redness and bruising were de minimus); and Wertish v. Krueger, 433 F.3d 1062, 1067 (8th Cir. 2006) ("relatively minor scrapes and bruises and [a] less-than permanent aggravation of a prior shoulder condition" were de minimus injuries).

Because Tillis's injuries were less than injuries previously found de minimus by the Eighth Circuit, and because it was not clearly established at the time of her arrest "that an officer violated the rights of an arrestee by applying force that caused only de minimus injury," Chambers, 641 F.3d at 908, Defendants are entitled to qualified immunity on the excessive-force claim. Therefore, Tillis's claim for excessive force fails as a matter of law.[5]

### 3. Failure to Intervene

Tillis alleges Foster failed to intervene during Davis's excessive use of force, claiming

---

[5] Tillis also appears to argue she suffered psychological injury from the arrest. Compl. [Docket No. 1] ¶¶ 36, 41. However, Tillis provides no medical or psychology records to support this vague assertion. As a result, an excessive force claim premised on this alleged injury also fails.

Foster should have come to her aid instead of trying to help Davis apply handcuffs. A police officer has a duty to intervene to prevent the excessive use of force, where the officer is aware of the abuse of a right and where the duration of the episode is sufficient to permit an inference of tacit collaboration. Krout v. Goemmer, 583 F.3d 557, 565 (8th Cir. 2009). Where, as here, a claim for excessive use of force cannot be sustained, a failure to intervene claim will also fail because the Officers could not be aware that their actions were legally excessive.

### 4. Unlawful Seizure

Tillis also alleges Davis arrested her without probable cause. "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause; and, an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" Ulrich v. Pope Cnty., 715 F.3d 1054, 1059 (8th Cir. 2013) (quoting Amrine v. Brooks, 522 F.3d 823, 832 (8th Cir. 2008)). "Probable cause for an arrest exists if, at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that an offense has been committed." United States v. Rivera, 370 F.3d 730, 733 (8th Cir. 2004). Probable cause is evaluated from the perspective of a reasonable person in the place of the officer. Id. "Officers are not required to conduct a mini-trial before making an arrest, but probable cause does not exist when a minimal further investigation would have exonerated the suspect." Amrine, 522 F.3d at 832 (internal quotations omtted).[6] "In the wrongful arrest context, officers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable

---

[6] Additionally, in Minnesota, a peace officer may arrest without a warrant if, in the presence of the officer, a public offense has been committed or attempted, or if it is reasonably apparent that further criminal conduct will occur. See Minn. Stat. § 629.34, subd. 1(c)(1) (providing that a peace officer may arrest without a warrant "when a public offense has been committed or attempted in the officer's presence"); Minn. R. Crim. P. 6.01, subd. 1(a)(3) (permitting a peace officer to make a warrantless" arrest in a misdemeanor case if "it reasonably appears . . . further criminal conduct will occur").

cause to do so, provided that the mistake is objectively reasonable." Copeland v. Locke, 613 F.3d 875, 880 (8th Cir. 2010) (quoting Baribeau v. City of Minneapolis, 596 F.3d 465, 478 (8th Cir. 2010)). Conversely, the officer is not entitled to qualified immunity if "the officer should have known that the arrest violated plaintiff's clearly established right." Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005).

Davis contends he arrested Tillis for obstruction of legal process, that is, for preventing Davis from removing Tillis and her children from the car and from allowing the car to be towed. Minnesota's obstructing legal process statute makes it a crime to intentionally "obstruct[], hinder[], or prevent[] the lawful execution of any legal process . . . ." Minn. Stat. § 690.50, subd. 1(1). However, "the statute does not apply to ordinary verbal criticism directed at a police officer even while the officer is performing his official duties and does not apply to the mere act of interrupting an officer, even intentionally." State v. Krawsky, 426 N.W.2d 875, 878 (Minn. 1988).

At summary judgment, the Court must draw all reasonable inferences in Tillis's favor, while still viewing the facts from the perspective of a reasonable officer. Much of the interaction between Tillis and Davis leading up to the arrest is unrecorded. Tillis claims she argued politely with Davis and followed Davis's instructions. When the Officers walked away from her vehicle each time before the arrest, they told her that she should sit down and stay in her vehicle. Tillis argues she still had an opportunity to make her case and prevent her car from being towed. Tillis did not think that Davis's repeated question—"Do you want to go to jail? . . ."—was serious. Seldom do individuals chose to go to jail. When the Officers finally gave her a direct command, Tillis claims she was not given a chance to comply. Instead, Davis immediately grabbed her and started the arrest. Tillis claims and the video appears to confirm, that she did not act aggressively toward the Officers. She did not position herself to block the Officers. And the

12

Officers did not ask her to move away from the vehicle so that they could prepare for it being towed. Even though officers are given broad discretion in emergency situations, see Elwood v. Cnty of Rice, 423 N.W.2d 671, 678 (Minn. 1988), there is no emergency in this case. The tow truck had not arrived and there was no immediate need to take action to remove Tillis or her children from the vehicle. Tillis was unarmed and presented no serious threat to the officers. See Brown v. City of Golden Valley, 534 F. Supp. 2d 984, 993 (D. Minn. 2008). Until Davis initiated the arrest, Tillis also claims she was only aware of being charged with a misdemeanor failure to have auto insurance. On the record, taking the facts in Tillis's favor, Davis did not have probable cause to initiate the arrest pursuant to Minn. Stat. § 690.50, subd. 1. And, under these facts, an objectively reasonable officer would not have had arguable probable cause for arresting Tillis. Therefore, at this stage of the litigation, genuine issues of material fact remain and Davis is not entitled to qualified immunity on Tillis's unlawful arrest claim.

### 5. Failure to Intervene

Tillis alleges Foster failed to intervene as Davis arrested her. The Eighth Circuit has not recognized a duty to intervene to prevent constitutional violations other than in cases of excessive force. Livers v. Schenck, 700 F.3d 340, 360 (8th Cir. 2012). "Assuming law enforcement officers have a constitutional duty to intervene outside of the excessive force context, such a duty was not clearly established" in February 2011. Id. Therefore, Foster is entitled to qualified immunity on Tillis's second failure-to-intervene claim.

### C. Section 1983 Claims Against City of Minneapolis

Using the factual predicate as alleged against Davis and Foster, Tillis alleges a Monell claim against the City of Minneapolis.[7] As a general matter, municipalities are not subject to

---

[7] Tillis has also sued Chief of Police Tim Dolan personally and in his official capacity, yet neither Tillis's Complaint, nor her Memorandum in Opposition to Summary Judgment, do more than name Tim Dolan. Tillis makes no specific allegations against him and does not defend against his dismissal. Therefore, Chief of PoliceTim Dolan is dismissed.

13

respondeat superior or vicarious liability under § 1983. Monell v. New York City Dep't. of Social Servs., 436 U.S. 658, 694 (1978). However, a municipality can be held liable for its own wrongs when the enforcement of a policy or practice of the municipality results in the deprivation of federally protected rights. Id. at 694. To demonstrate Minneapolis's liability under a Monell claim, Tillis must show that a policy or custom of Minneapolis was the "moving force [behind] the constitutional violation." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) (citation omitted).

Here, the Monell claim fails because Tillis has presented no evidence of a Minneapolis police policy that could have been the moving force behind Davis's decisions. Therefore, no § 1983 municipal liability can apply.

**D.    42 U.S.C. §§ 1985 and 1986**

A conspiracy claim under §§ 1985 and 1986 requires a showing of the following elements: (1) that the defendant conspired with others to deprive him or her of a constitutional right; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999). To succeed in proving a § 1985 conspiracy claim, a plaintiff "must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." Omaha Emps. Betterment Ass'n v. Omaha, 883 F.2d 650, 652 (8th Cir. 1989). In satisfying this burden, the plaintiff must recite "at least some facts which would suggest that the [alleged conspirators] 'reached an understanding' to violate [his] rights." Nelson v. City of McGehee, 876 F.2d 56, 59 (8th Cir. 1989) (quoting Myers v. Morris, 810 F.2d 1437, 1454 (8th Cir. 1987), cert. denied, 848 U.S. 828 (1988)). Tillis has not shown any evidence that Davis and Foster came to any agreement to violate Tillis's constitutional rights.

Because Tillis's § 1985 claim fails, her claim under § 1986 also fails, because a valid §

1985 case must be established before a § 1986 action can stand.  Gatlin v. Green, 362 F.3d 1089, 1095 (8th Cir. 2004).

E.     **State Tort Claims against Davis and Foster**

In addition to her claims under § 1983, § 1985, and § 1986, Tillis asserts claims of assault and battery (Counts I and II), false arrest/imprisonment (Count III), and negligent and intentional infliction of emotional distress (Counts IV and V) against Officers Davis and Foster.

   **1. Official Immunity**

As a threshold matter, Defendants argue that the state law claims against the Officers fail because they are entitled to official immunity.  "[U]nder Minnesota law, a public official is entitled to official immunity from state law claims when that official is charged by law with duties that require the exercise of judgment or discretion."  Johnson v. Morris, 453 N.W.2d 31, 41 (Minn. 1990).  Law enforcement officers are "generally classified as discretionary officers who may be entitled to official immunity."  Nelson v. Cnty. of Wright, 162 F.3d 986, 991 (8th Cir. 1998) (citing Johnson, 453 N.W.2d at 42).  "[A] public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong."  Elwood, 423 N.W.2d at 677.  The Court uses a two-step inquiry to determine whether official immunity is available to an officer: 1) whether a ministerial duty is not performed or is performed negligently, or 2) whether a willful or malicious wrong is committed.  Schroeder v St. Louis Cnty., 708 N.W.2d 497, 505 (Minn. 2006) (citing Anderson v. Anoka Hennepin Indep. Sch. Dist. 11, 678 N.W.2d 651, 662 (Minn. 2004)).  Whether or not an officer acted maliciously or willfully is usually a question of fact to be resolved by a jury.  Elwood, 423 N.W.2d at 679.

      **a. Davis**

As noted in the discussion of qualified immunity, genuine issues of fact persist regarding

the objective reasonableness of Davis's decision to arrest Tillis for obstruction of legal process. Arguably, this should end the inquiry. But Tillis also claims Davis willfully arrested her without probable cause. Elwood, 423 N.W.2d at 679 ("Discretionary conduct is clearly not protected if the official committed a willful or malicious wrong."). Tillis claims Davis had previously stopped Tillis and Grigsby, in 2009, and at that time Davis also threatened to taser Grigsby. Tillis argues that this previous incident affected Davis's approach to the present incident and that Davis lost his temper. Davis, on the other hand, claims he remained calm throughout the incident and genuinely believed Tillis was preventing him from carrying out his duties. On the record before the Court, whether Davis is entitled to official immunity—and whether the City of Minneapolis is thereby entitled to vicarious official immunity[8]—cannot be resolved on summary judgment.

### b. Foster

Tillis cannot satisfy either exception to official immunity in her claim against Foster. The first exception does not apply because the duties of law enforcement and crime prevention by police officers are discretionary duties. Morris, 453 N.W.2d 31, 41 (Minn. 1990). Additionally, Foster was not involved in Davis's decision to arrest Tillis or in Davis's initial application of force to accomplish that arrest. Foster simply came to Davis's aid in trying to safely complete the arrest. At that point, Foster had arguable probable cause to believe Tillis was resisting arrest. To satisfy the second exception, that a willful or malicious wrong was committed, Tillis must present specific facts showing Foster intentionally and knowingly committed a wrongful act without legal justification or excuse. Elwood, 423 N.W.2d at 679; Rico v. State, 472 N.W.2d 100, 107 (Minn. 1991). Tillis has failed to identify specific facts

---

[8] "'In general, when a public official is found to be immune from suit on a particular issue, his government employer will enjoy vicarious official immunity from a suit arising from the employee's conduct.'" Michaud v. Demarest, No. 06-4362, 2008 U.S. Dist. LEXIS 69349, at *9 (D. Minn. Aug. 26, 2008) (quoting Schroeder, 708 N.W.2d at 508).

16

showing Foster committed a willful or malicious wrong. His actions were based on and justified by a reasonable belief that Tillis was resisting arrest. Accordingly, the doctrine of official immunity bars any state law claims Tillis has asserted against Foster.

**2. False Arrest/False Imprisonment Against Davis**

"Under Minnesota law, the tort of false imprisonment, when asserted against [a law enforcement officer], is similar to that of false arrest." Cornelious v. Brubaker, No. 01CV1254, 2003 U.S. Dist. LEXIS 11022, at *11 (D. Minn. June 25, 2003) (citing Adewale v. Whalen, 21 F. Supp. 2d 1006, 1016 (D. Minn. 1998)). "The action for the tort of false imprisonment or false arrest protects the personal interest in freedom from restraint of movement. The restraint may be imposed by the assertion of legal authority, and if an arrest is made without proper legal authority, it is a false arrest . . . ." Lundeen v. Renteria, 224 N.W.2d 132, 135 (Minn. 1974).

Tillis has presented evidence raising issues of fact about the events immediately preceding Davis grabbing Tillis's arm and pushing her against her car. These fact issues bear on the legality of the restraint itself. Summary judgment is therefore denied on Tillis's state law claim of false arrest/imprisonment against Davis.

**3. Assault and Battery Against Davis**

Battery is the intentional unpermitted offensive contact with another. Paradise v. City of Minneapolis, 297 N.W.2d 152, 155 (Minn. 1980).[9] Minnesota law authorizes police officers to use reasonable force in effecting a lawful arrest or executing any other lawful duty. Minn. Stat. § 609.06, subd. 1(a), (d). For the use of force to be unreasonable, the Plaintiff bears the burden

---

[9] Assault is an action intended to and which does in fact create fear of imminent bodily harm. See United States v. Dinwiddie, 76 F.3d 913 (8th Cir. 1996); see also Minn. Stat. § 609.02, subd. 10. Although Tillis's Complaint alleges assault, Compl. ¶¶ 17-21, it is "apparent that the essence of plaintiff's claim is based on battery." See e.g., Paradise, 297 N.W.2d at 155, n.3. Because the damages Tillis alleges are based on actual physical injury and not as a result of fear of physical harm, the assault claim will not be analyzed here and that portion of Tillis's claim is dismissed.

17

of proving that force was excessive or unreasonable. Paradise, 297 N.W.2d at 155; Brown, 534 F. Supp. 2d at 995 (citing Minn. Stat. § 609.06; and Johnson v. Peterson, 358 N.W.2d 484, 485 (Minn. Ct. App. 1984)).

Again, genuine issues of fact remain about the sufficiency of the probable cause supporting Davis's arrest of Tillis. Accordingly, summary judgment is not appropriate on Tillis's claim of battery against Davis.

**F.     Intentional and Negligent Infliction of Emotional Distress**

In Minnesota, intentional infliction of emotional distress ("IIED") requires proof of the following four elements: (1) the conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) that distress was severe. Kelly v. City of Minneapolis, 598 N.W.2d 657, 663 (Minn. 1999). The severity of the emotional distress must be "so severe that no reasonable [person] could be expected to endure it." Hubbard v. United Press Int'l Inc., 330 N.W.2d 428, 439 (Minn. 1983) (quoting Restatement (Second) of Torts § 46, cmt. j (1965)). A plaintiff alleging negligent infliction of emotional distress ("NIED") must establish the four elements of a typical negligence claim (i.e., duty, breach, causation, and harm), and also three additional elements: (1) that the plaintiff was within the zone of danger of physical impact created by the defendant's negligence; (2) that the plaintiff reasonably feared for her own safety; and (3) that the plaintiff suffered severe emotional distress with attendant physical manifestations. Engler v. Ill. Farmers Ins. Co., 706 N.W.2d 764, 767 (Minn. 2005). "The appropriate method of proving the severity and causation of emotional distress is through medical testimony." Langeslag v. KYMN Inc., 664 N.W.2d 860, 869-70 (Minn. 2003). Summary judgment is warranted when a plaintiff fails to "meet the high standard of proof needed . . . ." Strauss v. Thorne, 490 N.W.2d 908, 913 (Minn. Ct. App. 1992).

In this case, plaintiff has offered no medical or psychological evidence of emotional

distress. Tillis's only argument is that her visit in October 2011 to Fairview Southdale Hospital demonstrates emotional distress. She reported to the nurses that earlier in the year she ceased breastfeeding and felt something was wrong. But, the doctors found nothing abnormal. Id. at Ex. 2. Tillis never visited a psychologist and never exhibited any other lasting physical ailments connected to her arrest. Tillis has not shown evidence of severe emotional distress. Therefore, Defendants are entitled to summary judgment on Tillis's IIED and NIED claims.

G.     **Minnesota Human Rights Act ("MHRA")**

Tillis alleges that Defendants' actions with respect to Plaintiff constituted both hostile and differential discriminatory treatment in the provision or lack of provision of public services. Compl. ¶ 63; see Minn. Stat. § 363A.12.[10] Then, Tillis alleges in vague and sweeping terms that "Defendant City of Minneapolis acted in a hostile, discriminatory and illegal fashion by unreasonably and unjustifiably seizing and arresting Plaintiff without probable cause." Id. ¶ 64. Finally, Tillis alleges the Officers "aided and abetted this discriminatory conduct, policy or practice . . . ." Id. Tillis argues her Complaint has established a prima facie case for "treatment so at variance with what would reasonably be anticipated absent discrimination that discrimination is the probable explanation." Mem. Opp'n Summ. J. 23 (citing Minneapolis v. Richardson, 307 Minn. 80, 87 (Minn. 1976)). Unlike in Richardson, the officers here are not accused of using racial epithets, and no other discriminatory indicators are present in the Complaint to suggest the Officers were so motivated. In addition, there are no allegations of similarly situated individuals being treated differently than Tillis. Finally, Tillis assumes without offering a shred of proof that the City has a policy of discrimination. A supervising

---

[10] Tillis does not cite to a particular MHRA provision in her Complaint. See Compl. ¶¶ 63-65. In her Memorandum in Opposition to Summary Judgment, Tillis cites to Minn. Stat. § 363A.11 of the MHRA. Mem. Opp'n Summ. J. 22. The language of the Complaint does not reflect § 363A.11, but rather echoes Minn. Stat. § 363A.12; therefore, the Court will analyze Tillis's claim under § 363A.12, not § 363A.11 .

official may be liable for a failure to train or supervise an offending actor. Parrish v. Ball, 594 F.3d 993, 1001-02 (8th Cir. 2010). But Tillis's token arguments in this regard are unsupported by any evidence . Therefore, Tillis's MHRA claims fail.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 12] is **GRANTED in part, and DENIED in part**:

1. Summary Judgment is **GRANTED** as to Count I (Assault); Count IV (Intentional Infliction of Emotional Distress); Count V (Negligent Infliction of Emotional Distress); Count VII (42 U.S.C. § 1985); Count VIII (42 U.S.C. § 1983 Monell Claim); Count IX (42 U.S.C. § 1986); and, Count X (Violations of Minnesota Human Rights Act) against all parties

2. Summary Judgment is **GRANTED** as to all claims against Officer Jeremy Foster and  Minneapolis Chief of Police Tim Dolan.

3. Summary Judgment is **DENIED** as to Count VI, 42 U.S.C. § 1983, pursuant to Plaintiff's unlawful seizure claim against Jordan Davis, but **GRANTED** as to Count VI, pursuant to the excessive force claim against Jordan Davis.

4. Summary Judgment is **DENIED** as to Count II (Battery) and Count III (False Arrest) against Officer Jordan Davis and the City of Minneapolis.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  November 18, 2013.